**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0923-19T3

SARA QUEJADA,

    Plaintiff-Appellant,

v.

SHOPRITE,

    Defendant-Respondent.

_____

Argued December 14, 2020 – Decided January 19, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2456-18.

James Bayard Smith, Jr. argued the cause for appellant (John J. Pisano, attorney; John J. Pisano, on the brief).

John J. Grossi, III, argued the cause for respondent (Carey & Grossi, attorneys; John J. Grossi, on the brief).

PER CURIAM

Plaintiff Sara Quejada appeals from the Law Division's October 21, 2019 order granting summary judgment to defendant, Village Super Market of NJ, LP, improperly pled as ShopRite. Plaintiff alleged she slipped and fell on water on the store's floor and suffered injuries to her spine as a result. We limit our review to the record before the motion judge, Mark P. Ciarrocca. Ji v. Palmer, 333 N.J. Super. 451, 463–64 (App. Div. 2000).

On July 6, 2018, at approximately 7:00 p.m., plaintiff was shopping with her daughter at defendant's supermarket when she slipped and fell as they "were going close to" where patrons "pay." Although neither she nor her daughter saw anything on the floor before the fall, plaintiff noticed her clothing was wet after she fell. Plaintiff did not know the source of the water. Her daughter did not see plaintiff fall because she was in front of her.

Photographs in the record show plaintiff on the floor of the supermarket in the area where she fell.[1] One photograph appears to show some liquid on the floor, although, at her deposition, plaintiff could not say what the substance was or whether it was the cause of her fall. At her deposition, plaintiff marked a

---

[1] Plaintiff's deposition testimony failed to explain who took the photograph, although she said it was taken after she fell and remained on the floor, unable to stand.

A-0923-19T3

photograph that is in the record demonstrating where she was in relation to the checkout counters when she fell.

Defendant moved for summary judgment, which plaintiff opposed.[2]  In a written opinion supporting the order granting defendant's motion, Judge Ciarrocca properly summarized the elements of a viable negligence claim.  See e.g., Fernandes v. DAR Dev. Corp., 222 N.J. 390, 403–04 (2015) ("To prevail on a claim of negligence, a plaintiff must establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages."  (citing Townsend v. Pierre, 221 N.J. 36, 51 (2015))).  The judge explained the duty owed by premises owners to their business invitees, such as plaintiff in this case, and noted liability generally does not attach unless the owner had actual or constructive notice of a dangerous condition, or had reasonable opportunity to discover the condition.  See e.g., Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 257 (2015) ("Ordinarily, an invitee seeking to hold a business proprietor liable in negligence 'must prove, as an element of the cause of action, that the defendant had actual

---

[2]  Defendant's motion sought oral argument if opposed, but plaintiff has failed to supply us with any transcript if indeed argument took place before Judge Ciarrocca.

A-0923-19T3

or constructive knowledge of the dangerous condition that caused the accident.'" (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003))).

Judge Ciarrocca then considered whether the motion evidence relieved plaintiff of the burden of proving actual or constructive notice through application of the mode-of-operation rule. See id. at 258 (noting the "burden imposed on a plaintiff . . . is substantially altered" when the mode-of-operation rule applies because it "gives rise to a rebuttable inference that the defendant is negligent, and obviates the need for the plaintiff to prove actual or constructive notice" (citing Nisivoccia, 175 N.J. at 563–65; Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 429 (1966); Bozza v. Vornado, Inc., 42 N.J. 355, 359–60 (1964))).[3] Relying on the Court's most recent guidance in Prioleau, the judge

---

[3] Model Jury Charges (Civil), 5.20F, "Duty Owned – Condition of Premises" (rev. Mar. 2017), summarizes the necessary elements of the mode-of-operation rule and provides:

> A proprietor of business premises that permits its customers to handle products and equipment in a self-service setting, unsupervised by employees, increases the risk that a dangerous condition will go undetected and that patrons will be injured. In self-service settings, patrons may also be at risk for injury from the manner in which the business's employees handle the business's products or equipment, or from the inherent quality of the merchandise itself.

A-0923-19T3

concluded that "even . . . viewing [d]efendant-store as self-service in nature[,]" plaintiff "failed to establish any nexus between the liquid she alleges caused her fall" and the supermarket's mode-of-operation. The judge entered the order we now review.

Before us, plaintiff contends all "inference[s] of fact" when weighed in her favor support application of the mode-of-operation rule and relieved her of the burden of proving defendant's actual or constructive knowledge of the condition. We disagree and affirm substantially for the reasons expressed by Judge Ciarrocca. We add only the following comments.

---

> If you find that plaintiff has proven that (1) the defendant's business was being operated as a self-service operation; (2) that the plaintiff's accident occurred in an area affected by the business's self-service operations; and (3) that there is a reasonable factual nexus between the defendant's self-service activity and the dangerous condition allegedly producing the plaintiff's injury, then the plaintiff is relieved of his/her burden of proving that the defendant had actual or constructive knowledge of the particular dangerous condition. In such circumstances, an inference of negligence arises that shifts the burden to the defendant to produce evidence that it did all that a reasonably prudent business would do in the light of the risk of injury that the self-service operation presented.

A-0923-19T3

We review the grant of summary judgment de novo, applying the same standard used by the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We must determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)).

Although the motion record is scant, we assume that like most supermarkets, defendant's business permitted customers to help themselves to products that were shelved or contained on stands or in bins throughout the store. As such, it fits the definition of self-service. See Prioleau, 223 N.J. at 262 (limiting the mode-of-operation rule to "the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk"). However,

the rule applies only to accidents occurring in areas affected by the business's self-service operations, which may extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities. The dispositive factor is not the label given to a particular location, but whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred.

[Id. at 263 (emphasis added) (citing Nisivoccia, 175 N.J. at 563–65; Ryder v. Ocean Cty. Mall, 340 N.J. Super. 504, 507–09 (App. Div. 2001); Craggan v. IKEA USA, 332 N.J. Super. 53, 57–58, 61–62 (App. Div. 2000)).]

Plaintiff contends that applying summary judgment standards, reasonable inferences from the motion record evidence demonstrated such a nexus. We disagree.

We start by noting that nothing in the record supports an inference that plaintiff's fall occurred near an area where unsealed liquid goods were sold. Indeed, the picture showing plaintiff on the floor after the fall has some bins containing dry goods nearby. There was no evidence that defendant dispensed liquid products in open containers, such as soda, coffee, or other beverages, for purchase anywhere in its store.

Plaintiff seeks to provide the necessary nexus by noting the fall occurred in close proximity to the supermarket's checkout counters and points to a

photograph in the record showing another customer with a case of bottled water loaded on the bottom of his or her shopping cart at checkout. However, there is no evidence supporting an inference that those bottles were leaking, or, for that matter, that any case of water bottles anywhere in the store, was leaking. It is not reasonable to infer that customers loaded leaking water bottles onto their shopping carts for purchase, or that unloading cases of sealed water bottles at the checkout counter, if that occurred in this day where supermarkets scan prices of heavy items remotely, resulted in actual leaks.

Because plaintiff's fall occurred near the checkout counters, she likens this case to the facts presented in Nisivoccia. There, the plaintiff slipped and fell on some loose grapes near the checkout lanes of a supermarket. Nisivoccia, 175 N.J. at 561.[4] There was no proof as to how the grapes, displayed in the produce area in open-top bags that permitted spillage, came to be on the floor or how long they were there. Ibid. The trial judge refused to give a mode-of-operation charge and directed a verdict in favor of the defendant. Ibid. The Court reversed our affirmance. Ibid.

---

[4] Here, the photo plaintiff marked as depicting where she fell shows some distance (not estimated either by her in her deposition testimony or any other evidence in the record) between the spot of her fall and the actual checkout counters. This can be determined with certainty by the change in the store's flooring between the two points.

After reviewing existing precedent, the Court noted

> [a] location within a store where a customer handles loose items during the process of selection and bagging from an open display obviously is a self-service area. A mode-of-operation charge is appropriate when loose items that are reasonably likely to fall to the ground during customer or employee handling would create a dangerous condition.
>
> [Id. at 565.]

The Court reasoned that it was equally foreseeable that droppage and spillage would occur in the checkout area. Ibid. "'Mode of operation' here includes the customer's necessary handling of goods when checking out, an employee's handling of goods during checkout, and the characteristics of the goods themselves and the way in which they are packaged." Id. at 566 (emphasis added). Simply put, cases of bottled water are so qualitatively unlike loose grapes in open-topped bags as to render Nisivoccia inapposite.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0923-19T3